My name is Ken Rhino. I represent the appellants Robert and Ethel Young who are present in the courtroom this morning. We greatly appreciate the opportunity to speak with you this morning and appreciate your kind attention in our case. I do have a sore throat this morning, your honors. I'll be frequently drinking from a water bottle or I'll be croaking in just a few moments. We filed this appeal following a jury verdict in favor of Allstate and against Mr. and Mrs. Young. The basis for our appeal is that the instructions given to the jury, taken as a whole, failed to properly state the law regarding what Allstate must prove in order to prevail on its affirmative defense of fraudulent misrepresentation. Instruction 16 was misleading and confusing and ambiguous, but most importantly it contained serious misstatements of law and was prejudicial to Mr. and Mrs. Young. Instruction 16 was a modified version of Missouri Approved Instruction 2305. MAI 2305 is the proper instruction to give with respect to a fraudulent misrepresentation made in an application for insurance and in certain other contexts. However, it does not properly state the law with what the insurer must prove in order to deny a claim based on a misrepresentation in a contents inventory. In order for the insurer to deny a claim on that basis, the insurer has the burden of proving that not only was the representation material, but that it was also made with a willful intent to deceive the insurer. This rule has been clearly set forth and established by this court in cases such as United Fire v. Casualty and Historic Preservation Trust and in numerous other cases such as Gould v. MFA and Cohen v. Metropolitan Light. Wasn't it the law of the case here? I'm sorry, your honor? Wasn't it the law of the case here? Say again? Wasn't it the law of the case? Didn't our remand order- It was indeed. Require that? It was indeed. Well, then why are we talking about other law? That's governing in this case. In order for the insurer to deny a claim on the basis of a misrepresentation made in a content inventory, again, it has the burden of proving a willful intent to deceive. And this court held in the previous appeal that this willful intent to deceive was an indispensable element in determining whether a particular misrepresentation can be a basis to deny the claim. Well, do the Missouri court cases now say that the approved instruction is sufficient to charge a jury with the element of intent to deceive? Your honor, not in the context of a misrepresentation made in a content inventory. Again, it is- Why isn't the same language adequate to charge a jury with the element of intent to deceive on a fraud in the inducement claim? Why isn't the same language adequate to charge the jury with that same element in a proof of loss claim? Your honor, if we're talking about- Well, the courts have held, have made that distinction clear. And- In the proof of loss case. Well, again- But I'm talking about the intent to deceive element. Right, the intent to deceive element is not set forth in instruction 16 or in MAI 2305. Well, do the Missouri courts, though, say that the MAI is adequate to charge the jury on intent to deceive? As a matter of fact, your honor, in a case cited by Allstate, which was Vitale versus Aetna Casualty Insurance Company. They cited this case in support of their use of the new or did not know language in instruction 16. But Allstate entirely misconstrued the Vitale case, which actually refutes the use of that language in our case here. In Vitale, the insurer asserted affirmative defenses of both arson and misrepresentation in the submission of a content inventory. Vitale court concluded that the use of the new or did not know language of MAI 2305 was appropriate for the jury instruction relating to the insured's misrepresentation regarding whether or not the fire had been intentionally set. In other words, it was appropriate for the verdict director regarding their arson defense. But the Vitale court also stated unambiguously that this language was not proper for the jury instruction relating to the misrepresentations Vitale made in his- I tried to read Vitale carefully, and you'll have to read specifically from the opinion where you think it said that. I can quote from the opinion, your honor, where Vitale held that not only must the- What page? What page? Read it, because I read it completely differently than you do. On, this would be page 1250, 1250. Yeah, I read 1250. All right, where? I didn't see where, I didn't think it said what you- It says, it talks about the various instructions given and the difference between the instructions. And it says that the instruction given with respect to the arson issue correctly included the new and did not know language, or did not know language. But the instruction 21, which was the instruction and- The text or the footnotes? In the footnote, footnote 17 here. Instruction 21 was the instruction regarding the misrepresentation in the contents inventory. And you see here it says, instruction 21 requires proof that Vincent knew his representation was false and that he intended to deceive the insurer. That's just a statement as to what that instruction required. What's your point? My point is, Your Honor, that the instruction given in the Vitale case regarding the loss of personal or the misrepresentation of the contents list did not have the language new or should know in it. Your point was fraud and the inducement cases have to be distinguished from claims cases. Vitale was not a fraud and the inducement case. But again, fraud and the inducement is not the only context, Your Honor. The difference between the arson defense and the fraud, I don't, I think you're misreading or reading much more into Vitale than is there. Your Honor, I disagree entirely. Well, go to the, back to Judge Collinson's question. Did the Missouri court say that 23.05 adequately captures the intent to deceive element? Not in the context of misrepresentation made in a contents inventory. What's the difference between that and the claim in Vitale? Well, there were two claims in Vitale.  In one, in the affirmative defense regarding fraud with whether or not they knew what the, whether or not they were aware of the origin of the fire. That one, the court specifically said that the language in 23.05 that said that, that the Vitalis knew or should have known that the origin of the fire was not as represented by their agent, was correct for, in that verdict director. But again, it says, but in the verdict director 21, regarding whether the misrepresentation were made in the content inventory, required actual knowledge of falsity. So, I mean, I guess you could use 23 if you removed the language knew or did not know and inserted actual knowledge of falsity. And if you also inserted that the misrepresentation was made with a willful intent to deceive the insurer. Because again, the tally court clearly held that both of those requirements must be in that verdict director. You don't think fraud in the inducement requires intent to deceive? In fraud in the inducement, fraud in the inducement does not require, well, fraud in the inducement does require an intent to deceive. What it does not require, your honor, is actual knowledge of the falsity set forth in the misrepresentation. Constructive knowledge in an application context. So you think that as long as an insurer gets an agent to fill out the claims form, that's a free pass on fraud? No, not at all, your honor. But they would have to prove that, and indeed, they specifically say in the tally, the tally had to have actual knowledge of the misrepresentation made by his agent. No, it doesn't say that. It does say that, your honor. And again, I would urge you to... All it does is uphold the instructions. It didn't say it would be error to have different language, did it? It just said, here's what 21 included in that case. What the district court used for 21 in that case is reported here. But was there a holding by the court of appeals as to whether it would have been error to word it differently? Say again, your honor? Was there a holding by the court of appeals that it would have been error to word it differently? I don't believe there was in that case, your honor. All right. But again, in our previous appeal, this court stated that Mr. and Mrs. Young were not bound by the information contained in the initial inventory, and that they had the right to subsequently explain, contradict, and correct those inaccuracies. Following the dictation of Mr. Of course, you had a trial on that. Right. But you're saying that if an insured hires an agent, and with the utmost willful blindness, refuses to know what the agent puts in the claim form, or make any attempt to have actual knowledge, they've just made themselves bulletproof of a fraud claim. Because actual knowledge is the only possible way to have intent to deceive on an insurance inventory claim form. That's what you've said this morning. Your honor, if this court said that Mr. Isn't that what you've said this morning? If I misstated your position, and if I have, please correct me. No, I don't think that is. Okay. So that's the position. I don't know if it's Vitali, but in some case I've read, and I haven't read very many of them, says we can't have a system like where the insured can insulate himself or herself from fraud responsibility simply by turning the claim process over to an agent. And I don't think that's what happened in our case, your honor. No, it's not. But that's the instruction debate we're having. We're not talking about the facts. In our previous appeal, this court said that Mr. And Mrs. Young were not bound by their signatures. Now, following the distincts of instruction 16, the jury could find in favor of all state, or find that all state was justified in denying Mr. And Mrs. Young's claim, even though the misrepresentations contained in the initial inventory were not proven to have been with intent to deceive. Even though Mr. And Mrs. Young did not have actual knowledge of the misinformation in the initial list. And even though they later, when they discovered those errors, before the claim was denied, corrected those errors. Now, your honor, the law was correctly stated, as I understand it, in instruction of what all state needed to prove misrepresentation in instruction 14, which said that your verdict must be for defendant if you believe that either or both Robert or Ethel Young intentionally concealed or misrepresented any material fact or circumstance relating to personal property damages sustained in the fire. This instruction correctly states the law with what all state must prove in order to deny the claim. And it's the only instruction that should have been given regarding all state's affirmative misrepresentation defense. Giving both instructions 14 and 16 created a mistaken impression in the mind of the jurors that all state had an alternative misrepresentation defense available to it that did not require it to prove misrepresentations were made with willful intent to deceive. And that did not require that Mr. and Mrs. Young had actual knowledge of the falsity. Are you saying they were inconsistent instructions? Absolutely inconsistent. Well, was that objection made to the trial court? I objected to the inclusion of both, yes, absolutely. On this ground, that they were inconsistent. They would confuse the jury because if you read them, literally, they are inconsistent. Your honor, I don't know if I use the word inconsistent, but my argument made it clear to the judge that I believe that they were and that the only instruction that should have been given with respect to the misrepresentation defense was the instruction number 14. And again, instruction 16, if you give both instructions and the jury looks at both of them, they say, well, one of them here requires intent to deceive. But this one doesn't. Instruction 16 does not require that we find an intent to deceive. The absence of the word intent to deceive in instruction 16 alone render that instruction fatally defective. And giving both instructions confused the jury and greatly prejudiced my client. Your honors, I see my time is running out here. If you have any further questions, I'd be happy to entertain them. Otherwise, I would ask that you overturn the judgment of the district court and remand the case back for a new trial. Thank you. Ms. Brooke? Good morning. My name's Ellen Brooke. I'm with the firm of Rainierson, Seuss, Schnurbush, and Champion. I'm here on behalf of Allstate. May it please the court. You could help me by just explaining in simple lay terms, or lay lawyer terms, why instructions 16 and 14 are needed, what distinct purposes they serve that make them essential for Allstate to have a fair trial. Absolutely, your honor. Allstate counterclaimed, well, first off, Allstate answered the breach of contract and vexatious refusal petition with an answer and affirmative defenses, one of which was fraudulent misrepresentation and a counterclaim for declaratory judgment. The counterclaim for declaratory judgment is codified by MAI 3224, which is fraud in proof of loss. That does not require reliance. Then the affirmative defense of fraudulent misrepresentation, which is fraud in the inducement, does require reliance, and that is in MAI 2305. Now, wait a minute. Sure. Your affirmative defense of fraud only applies in a fraudulent application case? No, fraudulent inducement. What's the inducement you're talking about? That you've made a statement that you know to be true or you don't know if it's true. No, I mean in this case, are you talking about inducement to signing the contract? Inducement to pay. No, your honor. Inducement to pay a claim. So you're calling fraud in making a false proof of loss claim fraud in the inducement? No. Under Vitale, 3224, fraud in the proof of loss, has different elements of proof than simply making a fraudulent statement. Vitale doesn't say it. It doesn't explain all that. It simply takes the instructions given and quotes them and talks about whether it can find error. Your honor, if I may? It doesn't purport to do a historical review of Missouri State cases. Oh, no. No, your honor. It does not. It simply... It's applying Missouri law. That is correct, your honor. And Missouri law has this verdict director for jurisprudence that I don't really understand and totally disagree with, but it's the law we have to follow. That is correct, your honor. So I don't understand why this isn't all duplicative and unnecessary. Why you need two? Why did you need two? Why can't the concept... Well, we were entitled to an instruction on our affirmative defense of fraudulent misrepresentation, which had to do with statements made by the insureds exclusive of the proof of loss. In that context, we have to prove that all state relied on the statements of the youngs, specifically with regard to who prepared the first content inventory, whether or not they read it, whether or not they intended all state to believe the statements they made in their recorded statement, wherein they discussed several of the items of property that later we find out they, in fact, did not own, were not in the garage, they did not pay the amount of money for. Those are separate and apart from the fraud in the sworn statement and proof of loss, which is why the two jury instructions are allowed and required. How much of this was confusion on their part? I'm sorry? How much of this was confusion on their part? And how much is what you say is fraud? Well, the youngs would have you believe that it was all confusion. And there was over a five-day trial. The plaintiff's case in chief went four days, and they had numerous witnesses discuss the fact that they were confused and they just didn't know, and despite several meetings with all state where all state said, are you sure this is your content inventory? They said, oh, yes, yes, yes. We wouldn't defraud the insurance company. No, this is just a mistake. We made a mistake. However, the jury found, based upon expert testimony, that none of the items even in the second content inventory could have been in the loss, because he would have ruled them out for the source of the fire. And as such, the jury found in favor of all state that the insureds, in fact, committed fraud. So if I understand you now, you're saying instruction number 16 related only to the representations that the youngs made about who prepared the content list? Not just those, but all of their statements outside of the actual proof, the sworn statement and proof of loss. All of their statements outside the sworn proof of loss. The sworn statement and proof of loss. But what is the representation at issue in number 16? You're saying there were multiple representations? There were numerous representations over a period of three days of recorded statements. But the first element in number 16 is that one or the other of the youngs represented to all state that the first content list was prepared by either or both of them. Correct. Intending that defendant rely upon such representation of the amount and value of the contents damaged by the fire loss. Correct. And then the second element is the representation was false. That's correct. Now what does that second element refer back to? Which representation? That they prepared the content inventory. Okay. So why did you say in answer to my question that 16 is not just about that representation? Oh, I'm sorry. There were numerous misrepresentations made with regard to the preparation of the content inventory over a period of time. But you just said that the representation at issue in number 16 is the representation about who prepared the list. That's correct. There were several statements with regard to who prepared the list, all of which were contradictory. One minute they prepared part of it. The next minute they prepared only a sliver of it. The next minute they didn't prepare any of it. But that's different than saying all representations outside the proof of loss. You're now saying it's several representations about who prepared the list? That was what ultimately the evidence supported with regard to the content inventory. Originally the affirmative defense was pled with regard to multiple misrepresentations, but at the close of the evidence and after we looked at what witnesses said, what the testimony was, we felt that our best defense, affirmative defense, with regard to fraudulent misrepresentation was with regard to the first content inventory. But as to who prepared it, not what was in it? That is correct. Well, in the first element of number 16, what does such representation of the amount in value mean? Such representation usually refers back to a previous mention of representation, doesn't it? Yes, and I believe that if you read the instruction, it goes back to the representation that the content list was prepared by either or both of them. Then why does it say such representation of the amount in value? I do not know, Your Honor. Okay, I thought you submitted this instruction. The instruction was changed a little bit by the court. We submitted largely this, but, however, there were some questions with regard to clarity, and I don't know. I'll be completely honest with you. I wasn't at the jury instruction conference. I just know that Judge Autry had gone back and forth a couple of times about this instruction, and I know that he wanted to- Well, are you attributing this language upon such representation of the amount in value to the judge? Oh, no, Your Honor. All right, all states submitted it. I was just asking what it means then. That's my question. Why do you say such representation of the amount in value if you say such representation refers back to the representation about who prepared the content list? I'm just trying to understand what it means. Our reading of Instruction 16 is that the representation is that the first content list was prepared by them and that they made the representations as to the amount in value, which is part of the content inventory list, and that these representations were false. Well, it says the representation in the second element. I would like to point out to the courts- I'm sorry. There was a defense that the sworn claim was wrong, right? That is correct, Your Honor. And you say that's number- There was a fraud claim, but you're saying that Instruction 16 doesn't include that issue? No, it does not, Your Honor. You're saying 14 is about that issue? That's correct, Your Honor. And 14 has been approved by the Missouri State Courts with regard to false swearing and a proof of loss. I mean, there's no reference in 14 to the submitted proof of claim or amended proof of claim. No, there's not a reference in the MAI at all on that. However, if you look at the MAI and all of the cases, it is very clear that the courts intend that that is the requirement for false swearing and a proof of loss. And you think the lay juror sitting there would understand this? I think that this jury would, yes, Your Honor. That they should not read 16 and considering whether the proof of claim was false fraudulently? I do, Your Honor. They would know that those three lines in Instruction 14 was the whole- I mean, this to me, it just illustrates my problems with the MAI approach. I mean, there's no way a juror is going to figure out what we're talking about here this morning from the bare language of 14 and 16. Sometimes district judges or trial judges do tell the jury that this question is about this issue. Was there any additional comment by the- No, Your Honor. There wasn't because Mr. Rino made a blanket objection. The court asked Mr. Rino multiple times if he had a proposed language change or a proposed addition to the instruction. At one point, he said that the instruction should include the word recklessness. All state agreed. And then he went back to his general objection that it simply shouldn't be given at all. I have nothing further unless the court has additional questions. You know, in Number 16, the third element refers to the falsity of the content list. Do you have that in front of you? I do not have Number 14 in front of me. Number 16? Oh, I'm sorry. Yes, I have Number 16 in front of me. You see the third element? It says either or both of the plaintiffs knew of the content list's falsity. That's correct, Your Honor. But you've just been telling us that 16 is not about the falsity of the list. It's about the falsity of who prepared the list. So why does the third element refer to the falsity of the list if that issue is only covered under Number 14? 14 does not require reliance. I know it doesn't require reliance. 16 does. I'm sorry. But why does 16 refer to the falsity of the content list if you say 16 isn't about whether the list was false? 16 is about who prepared the list and whether or not it was fraudulent, whether or not it was inaccurate. Well, you just said it didn't. So now you've done a 180. Oh, I'm sorry. Well, I apologize. You just told me that, yes, Allstate claimed it was a fraudulent proof of claim, but that that issue was not incorporated or included in Number 16. It's not addressed by Instruction 16. But it is. But that's why I'm asking. Now we see two questions later, it's directly addressed. Okay. I apologize, Your Honor. For me, to me, my reading of the law is that Number 14 is for proof of loss. While there is a second misrepresentation- That's not what it says. I mean, it doesn't refer to the list. 16 does. Well, the list is attached to the sworn statement in proof of loss. They're two separate documents, Your Honor. The sworn statement in proof of loss has, well, unfortunately, it's not included in the appendix. The contents list's falsity. That's correct. It's attached to the sworn statement in proof of loss. Right. It requires false swearing. Whereas the list itself, Allstate relied on the list in evaluating the claim. Wait a minute. The content list you're saying was not the list? It is the list. It's not the sworn statement. The sworn statement in proof of loss is a separate piece of paper. What does that document say? The attached list is true and correct? I'm sorry? The sworn statement refers to the attached list? No, it has the final numbers from the content inventory. There are three lines where it's the actual cash value of the loss, the recoverable depreciation, and the whole loss. And the amount and the whole loss of insurance. So you have those numbers on that sheet of paper, which correlate with the personal property loss from the content inventory. And then the insured sign it before a notary. Let's go back to Judge Colleton's first question. Sure. Do you think the Minnesota state courts have said that 23.05, modified in instruction 16, adequately encompasses the intent to deceive element of fraud under Missouri law? Yes, I do. And what's your best case for that? Kova. Kova, Vitale, Continental Western Insurance Company, Botanicals on the Park, Lindsay versus McMillan. All of these are encompassed in footnote number one on page 28 of our brief. So then why didn't, well, I mean this is hindsight speculative, but it seems to me the all states position should have been all we need is 16 for both, for our D.J. claim and our fraud defense. 14 is general and it doesn't quite say nearly as much or as accurately as 16. And counsel said it should have been only 14. It seems to me that the discussion shows it should have been only 16 if you're right about Missouri law. I am, Your Honor. Well, I would assume so. I think where Vitale might have gone the other way. Okay. So why didn't you just say let's go with 16? Because we were entitled to an instruction in our affirmative defense. You were entitled to a confusing, incomprehensibly terse instruction that doesn't refer to anything the jury has been listening to. Well, with all due respect, Your Honor, I believe that the jury had been listening about it, and the fact of the matter is they came back with a jury within two hours. I'm not listening to instruction 14. What in the world would they have gotten out of it? There was extensive evidence put on about who prepared the content inventory list and whether they put the figures on the list, whether they knew that the figures were inaccurate. That's 16. There is nothing in 14 that isn't better expressed in 16. Is there? I understand your position, Your Honor. However, there are numerous cases in Missouri which allow that both are submissible to a jury when there's an affirmative defense of fraudulent misrepresentation and a defense of false swearing. And there's simply no case law that suggests that the two of them together are duplicative or impermissible. There's just no authority for that. Furthermore, Mr. Rino has given this court absolutely no empirical evidence that this jury was confused. They came back within two hours. They did not have any notes asking the judge to clarify, and they were polled at the end of their verdicts reading and said that they all agreed and intended that that was their verdict. Furthermore, if Mr. Rino did not want the affirmative defense of fraudulent misrepresentation in there, he had the opportunity to move for a directed verdict on the affirmative defense or try to otherwise strike it, and he did not. He tried to strike 60. He had a general objection that he didn't want it correct, that he didn't actually try to strike the affirmative defense itself, simply complained as to the jury instruction that it shouldn't be given at all. Furthermore, there's no evidence that there's a, quote, probable effect on the verdict. I'm not even sure. I don't believe that that's the standard. Okay. I think we've done. All right. Thank you very much. I appreciate it. We've clarified the situation, and your time's up. Thank you. Does Mr. Young, Mr. Rino have some time? His time had expired, Your Honor. I'll give you a minute if you'd like. I think we understand the issue, but go ahead. Your Honor, I just want to say that all state urges that they're entitled to assert affirmative defenses regarding their fraudulent misrepresentation claim that did not require a willful intent to deceive, an instruction that did not specifically set forth that it must be determined that all state must prove that Mr. and Mrs. Young intended to deceive the insurer. When this was brought up in- Okay. You've already argued that. Okay. May I have another 20 seconds here? When that was brought up in the jury instruction conference, and I pointed out to the judge, the judge admitted. I'm quoting him here. He said, oh, they have to prove intent. There's no doubt about that. That's all in the briefs. It is, Your Honor. The judge, at one point, took back 16 and then put it back in. He did. But also, at one point, he said that he felt that the intent requirement was met in the language of 16, where it said intent that the insurer rely on the misrepresentation. And the courts have clearly held, and Cohen v. Michael Bobbin and Rapp as well- We'll read the instructions, the colloquy. Your Honor? We'll read the colloquy. Thank you very much. Thank you for your time. Thank you, Counsel. The case has been thoroughly briefed and argued, and we will take it under advisement. Please call the next.